2010 5-0-1-2 BEER against the United States, and for the benefit of the parties, we will not hold you tightly to the time limitations. So let's proceed. Mr. Landau, you're up. Thank you, Your Honor, and may it please the Court. I'm Chris Landau, and I'm here today on behalf of the plaintiffs. The Supreme Court remanded this case for this Court to consider in the first instance the government's preclusion argument. According to the government, my clients can't bring this case because they were absent members in another case, Williams, of which they received no notice and had no opportunity to opt out. That argument fails to... The government says that they did have actual notice. Is that sufficient? Your Honor, that is completely speculative in the first place. There's no precedent. Let's assume that they did actually receive notice of it, that they knew about the case. Is that sufficient? Two points, Your Honor. It depends the notice of what. The government just says they had notice of Williams. That's not the constitutionally adequate notice in the first place, because the notice that is constitutionally required is notice that the case was certified as a non-opt-out class action. Just knowing in the lunchroom that there was a case filed called Williams is not enough. Again, the important point is that's just speculative. Even assuming, Your Honor, that they had actual notice, to answer your question specifically, it's not enough, because opt-out is also a minimum, irreducible minimum of due process. Let's suppose it is. Let's suppose all that's required is notice. I'm really wondering whether actual notice is sufficient. For example, if somebody commences an action, A, against B, and B knows about the action, that's not sufficient. You've got to bring the person to court with a service of process. Why isn't formal notice from the court required and actual notice not sufficient? I agree, Your Honor. And certainly, again, there isn't even actual notice. There's certainly no record. But I think Your Honor's point is a good one. And that's why we have systems in our law. The rules set forth a certain kind of notice. It's not just kind of like you should, if you see something in the newspaper, that you suddenly, and so you may actually hear, gee, there's a class action, and that you suddenly have an obligation to go in and do something. I think the most important point here is an absent class member doesn't have any affirmative obligation to do anything. As the court said in Schutz, unlike a defendant in a normal civil suit, an absent class action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection. The court and the litigants, the way the class action mechanism is set up is that the court has an obligation to look out for the interests of the absent class member. The absent class member doesn't have an obligation to affirmatively go into court. Can I ask you about the Tycor case? If you can walk me through what you understand the court to have done in that case, because it seems to me it's a little odd. And I understand your argument is that even passing Tycor and the Rescue Dakota point, you have a fallback on to the due process. But as to the Rescue Dakota point, it seems peculiar, if my reading of Tycor is correct, for the court to have said that there's an open question as to whether Rule 23 binds a non-participant. But that question was not open in that case, because the Rule 23 issue was resolved in a case in which these parties did not participate. I agree with you, Your Honor. I think one thing... It sounds quirky to put that way. Is there an explanation for the court's decision that, in your view, either makes more sense or is more consistent with the position that your clients are taking in this case? Your Honor, I think it's important to keep in mind, first and foremost, that Tycor was a decision dismissing a writ as improvidently granted. So I think this particular issue was not briefed in Tycor. Tycor was briefed up as the ultimate due process challenge, and the court said, gee, we don't really want to be getting the due process issue, and it looks like there's a big Rule 23 issue, so let's just... This is just not a good vehicle. But I agree with you that there is an anomaly, and that really is the same anomaly that exists for due process too, of saying that a person should be bound in any way by something that with respect to the class part of Tycor, why absent class members... Well, not just that the ultimate decision is that they are bound or aren't bound, but that they're foreclosed from litigating that under the rule because that question was already decided, albeit in a proceeding in which they were not a part of. And that just seems kind of fundamentally antithetical to our system of justice. So is there an explanation that you've discerned that makes more sense for Tycor? Your Honor, again, I think the... There isn't really. I haven't been able to come up with anything better. I think that Tycor is the same anomaly, but again, our point is, even accepting that Tycor actually stands for that proposition, that you can be bound by anything in a case to which you were a complete stranger, Tycor might make more sense if the class there had actually been a regular B3 class action where the absent class members did receive notice and opportunity to operate. Sure, the problem would go away. The problem would go away. There would be two. I agree with you. It seems anomalous. But at the end of the day, the point is, whatever Tycor means, it certainly doesn't mean, and the government acknowledges this in their reply brief, that we don't have our full due process rights to challenge the preclusive effect. And as a practical matter, I think that since the rules were written to preserve due process, the analysis essentially tracks each other. I'm not sure that there is a huge gap there between what the rules provide and what due process requires. But you would... If that's true, then you would not contest the applicability of a B2 class action to a pure equitable action, setting aside whether or not incidental monetary relief is equitable or not, but just a pure injunctive or declaratory. Assuming that it satisfies all the other criteria, Rule 23a, and it's a legitimate class action otherwise, yes. But nonetheless, no. And that is okay, and monetary relief is not okay in a due process sense. Why? Well, Your Honor, I think that really... It goes back to this. Due process 101. Before you can be deprived of any kind of property right, you are entitled to notice and opportunity. Well, I think what Judge Bryson is asking you, if I understand correctly, is that... Is it clear that a party to a B2 class action who didn't have notice and opportunity to be heard would be bound by the result as to injunctive relief? Yeah. Is that established by the Supreme Court cases? I'm not sure it is. I see. So you're saying, well, if it is a B2 case, there may be circumstances, even in B1 or B2 actions, where notice is required, and the rule... Rule 23c is what provides for notice in class actions. And for instance, in B1 limited fund cases, and the Ortiz case gets into this, there are circumstances in which you may have a limited fund for money and notice is required in those particular cases, even though as a general matter, notice is not required in B1 and B2 cases? Well, maybe for all we know, and I don't see that the Supreme Court has decided this, and there's some language about it, it may be that in B2 class actions generally you can bind an absent class member who didn't receive notice at all. The due process in order to bind the absent class member in a B2 class action requires notice. I mean, notice, I mean... It certainly, again, our fundamental... Are you conceding that the Supreme Court has said it's okay not to give notice and to bind people in B2 class actions? No, no, certainly not categorically, Your Honor. Again... In any case? You know, the rule, I don't know that we're saying that B2 is unconstitutional on its face, because the rule, again, says the court may give notice... It's not a question of whether B2 is unconstitutional, it's a question of whether in a subsequent action, due process forbids you to bind an absent class member in a B2 injunctive action. I don't know what, I'm not sure what the answer is. Well, Your Honor, and I agree with the instinct underlying your point, which is it's very problematic in our system to say that somebody who is a stranger to a case and wants to file a lawsuit, somebody says, guess what, there's this other case over here of which you never heard that binds you, guess what, you can't do it. Now, the court has at least suggested, or the lower courts have suggested, that that's okay when you're talking about declaratory or injunctive relief. And so the question isn't why money... Relief so you have adequate representation. Correct, where all the other things are met. But the question really isn't why is money different, the question is, those are the carve-outs, declaratory and injunctive relief, where the idea is that that relief is indivisible, and so you necessarily, the idea is that you will, you're kind of a free rider, you will get the relief whether you want to or not. Or you will be denied the relief, notwithstanding that you had a good argument for why you should be getting it. Right, but again... You won't be able to. Whatever the ruling purely... You can't argue in law of injunctions, you will not be able to come back. That's true, and that is certainly problematic in and of itself, but the point here is, as the court, I think, underscored in Wal-Mart, when you have money involved, these concerns are present in spades. And then the question really becomes, in the Williams case, to which the government is trying to give preclusive effect here, the only question the court left open in Wal-Mart was, could you certify a class that includes some claims for monetary relief without giving notice and opt-out rights? And the court said, well, we don't decide that question, that raises a very serious constitutional problem, if there's any monetary component, but certainly in this case we don't have to decide that entire question, because the only circumstance in which that might be possible, might, is where the monetary relief is incidental, and it defined incidental as being individualized and flowing directly from injunctive or declaratory relief. The government focuses only on the individualized part of that, and says the whole world is divided into individualized versus non-individualized claims. That is just not the way Wal-Mart defined it. Individualized is necessary but not sufficient to be incidental. And then the question really goes, it can't possibly be that Williams involved incidental monetary claims, because it was a Tucker Act case, and under the Tucker Act, as your honors know, because this court probably sees more Tucker Act cases, well, sees all the Tucker Act cases by definition, the Tucker Act is limited jurisdiction, the waiver of sovereign immunity is limited to claims for money damages. So Williams can't possibly have been a case primarily for declaratory or injunctive relief. Williams was a case about money, and the government conceded that in its brief in this court. Flowing through this case and others is this notion that back pay is an equitable remedy. We see it in various places. Where does that notion come from, if you know? Your honor, I think that is a, that has been the subject of a lot of debate, and if you look at Bowen and Knutson, the two Supreme Court cases that discuss this issue, Justice Stevens has the majority in Bowen saying that it's back equitable, Justice Scalia is in dissent, Justice Scalia gets the majority in Knutson basically saying that money is virtually always legal in nature. But again, I think, I guess my point there is just to kind of murky when back pay. I thought you said it doesn't matter. B-2 talks about injunctions. My windup was too long, your honor. It doesn't matter is the point. And the question is, is it monetary relief? So the legal equitable issue of back pay, and the Supreme Court made this quite clear in Wal-Mart, it doesn't matter because the question is, when you're talking about money, that, whatever might allow courts to dispense with notice and opt out rights in cases that are declaratory or injunctive, when you're talking about money relief, those considerations are there. Whether the money is treated as equitable or not equitable misses the point, and I think that's one of the primary lessons of Wal-Mart. And so, you don't have to get into that point. And so again, the question is, however you look at back pay, the point remains, it is a, it is seeking monetary relief, and as well as required by the rule. If the government were correct, in their view of the world, that all you need to look at is, is the claim individualized or not, you could have non-individualized claims purely for money, without any relationship to a declaratory or injunctive claim. And that would be perfectly fine to certify on a non-opt-out basis, and could be given preclusive effect, without any kind of problem. But that's not the line that the Supreme Court has ever drawn. Can I lead you to another point? Sure. Are the issues in this case the same as they are in Williams? And let me tell you what my concern is about that. Williams did not involve the 2001 statute, which was enacted after our decision. It involved the validity of earlier statutes, 95 and so on. This case involves the 2001 statute. Does that have any bearing on whether the issue in the two cases is the same, and does that bear on whether there would be issue preclusion if the other, the due process requirements were satisfied? Your Honor, I don't think that the 2001 statute changes my client's constitutional arguments, because all my clients were on the bench before 2001. So whatever the 2001 statute did, it couldn't have changed their, whatever expectations that they had, or whatever rights they had, going to the merits of their claims, the 2001 statute couldn't have reduced their rights constitutionally. That's a somewhat different issue, and it is important with respect to the 2007 COLA, which isn't governed by the earlier statute. Right. And our claim here is only for the 2007, because we, the statute, we brought this case in 2009, and you can go back six years under the statute of limitations. But the question is, does the 2001 statute change the analysis or the legal issue? Because this is issue preclusion, you're right. And Judge Newman, in her dissent from the initial hearing on Bonk Petition, in this case it was working its way up the first time, suggested that the Supreme Court's decision in Patter and the 2001 statute did make a difference. With respect, our claims, though, if Williams is correct, it's not obvious how the 2001 statute changes the basic analysis of Williams or the issue that Williams decided the legal issue that... The government seems to suggest that there might be a difference between the 2001 statute and the COLA statute. Well, if there is... At least in this third article. Certainly, we don't want to argue that... I mean, we don't believe there's issue preclusion at all. So, you know, to the extent there is daylight there and it's not the same issue, that's even... that's great by us. I'm not going to stand here today and argue against it, certainly. But again, we think that even if you don't go there and say that the issue is not the same, this is kind of due process 101 that you can't tell people, guess what? You want to bring a lawsuit about your pay. It's hard to imagine a more classic or quintessentially monetary judgment than your pay. And again, even if... however you characterize pay, equitable, legal, it's still your pay. It's monetary. It's monetary, yeah. It doesn't make it... I mean, perhaps it doesn't matter, but it doesn't necessarily make it legal, oddly enough. Well, there's... There's a whole line of civil rights cases that have probably because the original 64 Act didn't have a jury trial right and they had to... the courts had to deal with the problem of where is the 7th Amendment coming in here and they said no 7th Amendment problem because this is equitable. Right. Which is an odd concept, but that's the way they did it. I wonder how broadly that applies. And again, it may not matter. I think it really doesn't. If it does, then perhaps that notion that back pay is equitable in nature is confined to the Civil Rights Act. Even if it... again, A, it doesn't matter. And again, let's not lose sight of the fact that Williams was a Tucker Act case, so the government has a quandary here. Either there was no jurisdiction under Williams in the... it was a little Tucker Act case. Either there was no jurisdiction in Williams in the first place because it was primarily seeking equitable or declaratory relief, or excuse me, injunctive or declaratory relief. That's the line that is drawn. Right. Or it can't... or the money predominated and therefore it can't be given preclusive effect. They can't have it both ways. And it's kind of curious when you see the government in Williams acquiescing in the certification of a non-opt-out class on the basis under B-2 that it's seeking declaratory or injunctive relief, and then coming to this court and saying, well, your honors, we're noting a point about Tucker Act jurisdiction. You can't have the claim... again, what the government said is the claim in Williams essentially won for money damages, which is true here. We quoted this in our reply brief, the words from the government's brief, and of course it has to be that way because there couldn't have been jurisdiction in Williams. The waiver of sovereign immunity is limited to money. So, again, there may be cases where it's hard to decide... A, this court doesn't have to decide the answer to this constitutional question the Supreme Court left open in Walmart, whether there are... there's ever a time when claims for monetary relief may not require notice of non-opt-out rights because the only door it left open was where they're incidental, and we know because of the Tucker Act jurisdiction in Williams that whatever incidental means, monetary damages, it couldn't possibly have been incidental in a Tucker Act case. I have one other question. You mentioned the statute of limitations a moment ago. Do you agree that the statute of limitations bars challenges to the earlier statutes from 1995 to 1999? Your Honor, I think it bars us from challenging them directly and saying we want to recover money going back to 1995. I think where what we asked for in our complaint was to say we can go back six years, but then what we believe is that the base salary that we get going back six years should reflect those earlier... The statute of limitations doesn't bar that. Doesn't bar that. Yes, Your Honor. I mean, that's a remedial question we can get to down the road, but that's our theory, Your Honor. Yes. Very well. We'll reserve here a lot of time and hear from Mr. Semper. Thank you, Your Honor. Thank you. Mr. Semper. May it please the Court? From the outset, I'd like to address the point made by Mr. Landau that the Williams case was entirely a Tucker Act suit, and therefore there's some type of tension between the arguments we're making now and the statements made in the government's brief in that case. Back then, Williams was not solely a Little Tucker Act suit. It was a suit grounded on both the Little Tucker Act and the federal question jurisdiction under Section 1331. And for that reason... Well, the complaint recites the Little Tucker Act a lot, right? That's correct. The original complaint was amended during that case to add 1331 as a jurisdictional basis. But what is the cause of action other than the Little Tucker Act? I mean, where do you have the authority for the court to come in and grant relief that wouldn't be authorized by the Little Tucker Act? Well, the Williams plaintiffs argued, and this Court noted in its decision, that the jurisdiction on that aspect of the case came from the Compensation Clause itself, which this Court in Hatter held was a money-mandating provision. And so that substantive right combined... Again, that's money, though. It's money-mandating, and that means it's monetary. Again, the district courts, being a court of general jurisdiction, would have the authority to issue declaratory judgments or declarations of the party's rights in the context of that suit under 1331, and that, in fact, is what the court did. Well, even the Court of Federal Claims, in a back-paying suit, will, in a sense, declare the party's rights, because in order to enter a judgment in favor of plaintiffs, for example, the court has to say, I think the government is wrong, and it's theory that they shouldn't have been paid according to the plaintiffs' theory. So the court says that, paragraph one. Paragraph two, therefore, I order the government to pay back pay. That's a declaration, I suppose, of sorts, but it isn't regarded as a form of injunctive and declaratory relief in the sense that we usually use that, and what it all goes to is the monetary award. Isn't that really the same thing that happened here? Not in the Williams case. That's what I mean, the Williams case. Your public thing on the future will be... Correct. ...not the order to make the back-pay payment, but the order that in the future that the compensation be computed in a particular way. That's correct, Your Honor. And the Williams plaintiffs focused on that precise point. We pointed out in our briefs that it was the prospective aspect of the judgment of Williams which made it declaratory in a sense, and that was the critical ruling in that case, or at least that was the relief that was sought first and foremost. And I would add, in the aspect of the government's brief that the appellants have cited, that statement was made simply in a threshold argument that the government raised regarding Tucker Act jurisdiction. The government had noted, I believe, for the first time in the case, that there was at least a question as to whether the claims exceeded $10,000, and therefore there was a question as to whether the little Tucker Act applied at all. That was the only point that was being raised there. It wasn't the issues that we're dealing with now. In response, the Williams plaintiffs in their brief argued quite forcefully that this was not simply a little Tucker Act case. It was also a federal question case, and that the district courts had broader powers than the court of federal claims to award declaratory and injunctive and prospective relief, and that's precisely what the district court in this case did. And so this notion that there might be a jurisdictional problem because of the $10,000 limit was simply misplaced. And by the same token, Mr. Lando's suggestion that if our position is accepted that this was both a case involving declaratory relief, prospective declaratory relief, and monetary relief, that there would be some infirmity then with the Williams court's jurisdiction is simply not correct. So you're characterizing the monetary aspect of the original judgment as being incidental to the declaratory and injunctive relief? Correct, Your Honor. And is this based on the notion that back pay, albeit monetary, is equitable in nature, or simply that it was in the particular circumstances of this case less significant? I would say neither, really, Your Honor. Why is it incidental then? Well, if the court looks to the test as formulated by the Fifth Circuit analysis, incidental means that it flows directly from the award of declaratory and injunctive relief. It is not consequential. It's concomitant with the award of declaratory relief. In other words, the case was really about the future rather than the past. That's one aspect of it, Your Honor. It might also be, and we've tied it into the Supreme Court's analysis in Wal-Mart, it really is consistent with the Court's analysis in Wal-Mart of the notion of incidental relief versus relief that, I'm sorry, individualized relief versus relief that is awardable to the class as a whole. What Supreme Court case tells us that if it's monetary relief, future, past, whatever, that affects the class as a whole that you can bind someone who wasn't given notice, formal notice? Well, there isn't a Supreme Court case on that. That was an issue that the Supreme Court in Wal-Mart carved out. The closest the Court got prior to that time was the Thai Court, which set up the issue. So we're riding on a blank slate. At least from the Supreme Court precedent. But as we've noted, the courts of appeals have adopted in varying degrees this notion of incidental damages, and it is consistent with, most importantly, it's consistent with the Supreme Court's reasoning in Wal-Mart as to what the essential nature of a B2 class is. It doesn't matter what the labels are, and the parties have sort of gotten caught up in a lot of semantic descriptions of what money relief or damages can be, whether they're incidental or essential or predominant. I think the Supreme Court, the essence of its holding in Wal-Mart, is that these labels don't mean anything. At least for B2, what is important is the notion that the claims for relief must be awardable to the class as a whole. Yeah, but what my problem is, suppose that the Williams case had never sought back pay at all, but it just had sought a declaration of injunction to pay the judges in the future without regard to the 95 to 99 statutes. Why wouldn't notice have been required in those circumstances? We'll put aside the opt-out question, but why wouldn't at least formal notice have been required? If it was only injunctive or declaratory? Yeah, to require the future payment of money. Well, if there was no money claims at all, then notice certainly wouldn't be – it's generally not required under B2. Well, what Supreme Court case tells us is that in those circumstances notice wouldn't be required to find an absent class member. Under B2, the court hasn't addressed the B2 class specifically, except again in the Tycor case, which it dismissed. So this case really presents a lot of open opportunities for the parties to litigate, at least at the Supreme Court level. One thing is clear, though, is that the notion that the appellants have suggested that notice and opt-out rights are the touchstone of due process in all cases, and therefore must be available in all class contexts, is not something the court has held. Going back as early as the seminal case of Hansberry v. Lee, the court addressed the issue as being one of adequate representation with parties of common interests. Over the years, as the Supreme Court's precedent has developed on the issue of notice in different contexts, yes, there has been a question as to whether it's simply a matter of adequate representation or does notice come into play somehow. The court addressed that most directly in Richards v. Jefferson County, Alabama, which it seemed to recognize that yes, we have precedents that say notice is the touchstone of due process, but we also have Hansberry and other cases that seem to say it's adequate representation. We'll just assume that that issue is, as Hansberry said, and we'll hold open the issue as to whether adequate representation can remedy an absence of notice in some cases. And so that's what we're saying here. The courts of appeals have sort of filled the void in that respect and looked to, in B2 cases, whether any types of money claims can be properly certified under that rule consistent with due process. And as we've explained, many cases have held, as long as they're incidental, in the sense that they spring directly from the declaratory injunctive relief, they're okay. Are there court of appeals cases that have said that in the context, where the injunctive relief in the future is for the payment of money? Most of these cases, I believe, involve back pay claims. Well, that's not the question. The question is if the injunctive relief is itself concerned only with the payment of money, if they held that under those circumstances that we don't need to worry about notice and that any back pay claims are just incidental to the future relief. I'm not quite specific on whether that question was addressed in those cases. I mean, the classic case, again, in the civil rights area, is that someone is fired, they sue, they get an order, an injunctive order for reinstatement, and then in addition to the reinstatement, the court says, and by the way, you also get back pay for the period that you were out, that you shouldn't have been fired. So the injunctive relief there would not be directly monetary, except to the extent that you say, well, but by reinstating the person, they are going to start being paid again. But that's not the gist of the injunctive relief. So in that setting, that's I think the setting in which the back pay has been characterized as being incidental or ancillary for purposes both of jury trial and also to the extent that they are class actions, class action. Let me ask you, well, go ahead. Well, I was going to say, in this case, the plaintiffs in Williams didn't specifically seek an injunction. They sought a declaration that the so-called Section 140 provision was unconstitutional to the extent it foreclosed pay increases provided by the 1989 Act. So that is the declaratory judgment that they received first and foremost. They argued in their appeal to this court that that, the critical point was that declaratory relief was prospective and they also added that it was essentially equivalent to an injunction even though they didn't specifically request an injunction. So it differs somewhat from the sort of classic Title VII discrimination. What about the actual notice point? I mean, it strikes me in reading some of these Supreme Court cases on service of process that if A sues B and B has actual notice of the case, it's still insufficient to enter a judgment against B. You've got to have some sort of formal service. And why shouldn't that be true also in this context that in order to have notice, if notice is required, that it's got to be formal notice rather than informal notice? Well, I start by saying we don't know what the state of the actual notice is. Let's assume, my hypothetical, I'm assuming that these judges actually knew about the pendency of this case. They knew, they'd read the complaint, let's assume, okay? And they did nothing. And so why would that notice be sufficient constitutionally? Why wouldn't it have to be formal notice, some directive from the court, some letter from the court advising them of the action and their rights to do something, either to opt out or to intervene or whatever it might be? Well, I guess the answer I can only say is generally due process is not a rigid formula set concept. It's the process that is due dependent on the circumstances. And the Supreme Court has held in the Espinoza case we cited in our brief, perhaps otherwise, that in some cases actual notice is sufficient to satisfy the strictures of due process, even though there is some sort of rule or process that requires a more formalized notice procedure. Espinoza, the bankruptcy case? Yes. Yeah, but there was formal notice there. It wasn't informal, right? There was, I believe, there was, yes, two different types of notice. One was given under different rules of the bankruptcy process, yes. Let me see, following up on our exchange earlier, if I understand where you would say that actual notice is required in, let's say, a pure Tucker Act claim in which someone comes in and says I should have, I and many people in my level should have been paid at a higher GS rate than we were. The conversion in the agency to a new GS scale, let's say, was unlawful, and it has cost all of us a varying amount of money, but basically something that could be easily calculated according to what one's GS level is. They go into either the court of federal claims or into the district court under the little Tucker Act with a class action. Now, is it your view that due process would not require, assuming adequate representation, due process would not require notice to the absent class members in that setting? It's a cohesive class in the sense that presumably everybody's in the same boat, but it's a pure little Tucker Act action. Well, Your Honor, of course, if they went into the court of federal claims, it wouldn't be the issue. There is no B-2 in the court of federal claims. Right, they're all opt-in. It's all opt-in. So they're in the district court under the little Tucker Act. Do you say no problem, no notice? Well, I would say that's really much like what occurred in Williams, and in that sense, so long as... But you seem to be relying in Williams on the district court's other sources of authority. I'm really trying to see whether your position is that even under the little Tucker Act by itself, that still would not require due process. In other words, where the only thing the district court can do is to announce, not to issue a declaratory judgment under 2201 or not to issue an injunction, but simply announce as a predicate for the award of monetary relief that the action taken by the agency was illegal, and not to say, agency, you may not continue this action, although, of course, the agency, at least after the order became final, would not continue the action. So the difference between an injunction, a declaratory judgment, and a monetary award in that setting is kind of thin. But in any event, what is your position with respect to the due process issue in that setting? Well, it might make a difference as to what the nature of res judicata is being asserted for claim preclusion for future claims as they arise and perhaps... Well, I was outside the claim, the claimants who brought it. I was never notified. The claimants who brought it lost, and I come in and say, I would have made a different argument. It's only back pay. Purely back pay. There's no declaratory or injunctive relief. So you can't say that the back pay claim is incidental to some future relief. Well, I would say then the argument doesn't rest entirely on the prospective nature. We made that point in response to the appellant's suggestion that there just simply would have been no difference at all if they had just dropped out their request for declaratory judgment or declaratory relief in this case, and we pointed out that, well, there would have been a difference in that they would not have received the prospective relief that they did in fact obtain. Well, but as a practical matter, they would. I mean, a declaratory judgment is not that different, I think you'd agree, from an order of the court granting retrospective relief predicated on an interpretation of statute or constitutional provision that is not limited to the retrospective effect. Well, you know, it's unusual because the whole long-running dispute in these cases seemed to be a back and forth between the courts and the Congress, issuing legal rulings and then Congress responds and then another legal ruling and Congress responds. Well, let me make sure, though, I'm not sure I got your answer to my question. I may have interrupted you. You were about to say, I think, that we haven't relied on the prospective relief. Is that a predicate to saying that, and therefore the due process would not require, even in the pure Tucker Act retrospective monetary relief setting, due process would not require notice to the person who does not have even actual notice and would have made a different argument, assuming adequate representation, albeit representation that that person doesn't agree with? Well, I would say, yes, due process doesn't require notice now, but with the caveat that you said that person would have argued that they could have made or would have made different arguments. Now, that's what we're sort of touching on. The parties really aren't in dispute as to the basic issue here. It's one of due process. Hansberry indicates that the issue for this Court to decide is whether the procedures employed in the first suit fairly protected the interests of the absent class members, and we readily acknowledge that an absent class member can meet or can avoid the preclusive facts if they can come in and show some reason why their interests were not adequately protected, and that might be that they were not adequately represented or that there were divergences of interest between themselves and the named parties or that there was any other issue, individualized issue, claim, defense, what have you, that differentiated their interests from those that were adjudicated. So in Your Honor's hypothetical that if a plaintiff could come by and say, I would have made this argument, they missed the central argument that would have prevailed, carried the day. That's really in a sense saying that there wasn't adequate representation by class counsel and that would provide a colorable basis to avoid the preclusive effect of the first judgment. Does this case involve the same issues as Williams with respect to the 2007 denial of the colorless and the 2001 statute? The core issue is the same, yes, as Mr. Landau seemed to acknowledge. So there's no difference in terms of the constitutionality of the earlier statutes and the 2001 statute? Well, the 2001 statute does present an additional argument, additional issue that the plaintiffs would need to overcome. However, to prevail, they still need to… What's the difference between the 2001 statute and the earlier statute? I understand mechanically what the difference is, but in terms of the legal argument, is there a difference? Well, this court in Williams held that the Section 1940 was not a permanent piece of legislation. It expired in 1981 at that time and therefore didn't apply. Can the 2001 statute be constitutional while the earlier statutes are unconstitutional? Well, as the Solicitor General pointed out in the brief in opposition, for judges taking the bench after the 2001 statute became effective, there couldn't understandably be a claim to future pay increases for that class of plaintiffs. Yes, but with respect to that point, you would agree, I suppose, that if the 2001 statute is unconstitutional, it's that one class of judges necessarily falls, right? It can't be rewritten to apply it only to future judges. If I understand Your Honor's question, you're saying, can the 2001 statute apply retrospectively? Well, you've argued in the SIRTOP that there's no tolerable claim by judges appointed after 2001 to challenge the 2001 statute. Okay, let's assume that that's true. But if the 2001 statute is unconstitutional as to judges who are appointed before 2001, the statute falls, right? It can't be rewritten, so it only applies to some judges. Correct? That would be correct, yes, if it's unconstitutional. Yeah, then it falls. Yes. But the question I was asking was, put that aside, the 2001 statute is the only thing that denies the total respect to 2007. Does that present any different issues than the 1999 statute, for example? I think your answer is it does not, right? It doesn't. It adds an additional point, but even if it didn't exist, there would still be the same arguments that this court addressed in Williams as to the 2007. It's the same underlying claim, it's just for a different year. If the 1999 statute is unconstitutional, so is the 2001 statute. Is that correct? The 1999 statute? Yeah, or the 1995 statute. If the 1995 statute is unconstitutional, so is the 2001 statute. If the theory that the plaintiffs argued is correct, their theory was that the right to COLAs for the future vested in 1989 and therefore could not be altered or diminished after that time. So any statute that purported to block or deny future COLA increases necessarily would be violative of the Compensation Clause, yes. Of course, in Williams, this court held that Section 140 expired on its own terms in 1981, so it didn't apply at that time. Congress, after the court's decision, made that amendment in 2001 to clarify that it applied in 1981 and all subsequent years. So if this case ever were to proceed further, that might become an issue, whether this court's ruling... I'm a little confused. Let me see if I can be clear. If the 1995 statute is unconstitutional, does it necessarily follow that the 2001 statute is unconstitutional? Well, I don't know if it follows from that point of logic that it's tied to the 1995 statute's constitutionality. It's more what is in terms of the legal principle established in invalidating the 1995 statute. That same legal principle would invalidate the 2001 statute. Well, it depends, because the 2001 statute deals with Section 140, which was enacted prior to the 1989 Act, which is the source of the right for future COLAs. So if Congress is correct, as they seem to have indicated in 2001, that Section 240 took effect in 1981 and required congressional approval for pay increases in that year and every year thereafter, then there would be a defense to a constitutional challenge to future blocking statutes. But that would be based on 140, right? Correct. Which would apply equally to the 1995 statute. Correct. And in effect, it seems that in passing the blocking statutes, or actually in every year after 140 was enacted, Congress seemed to be acting under the authority of that provision in either authorizing a COLA or denying a COLA in those few specific years of 1995, 1996, 1997, and 1999. Thank you. Thank you. Mr. Mendez. Thank you, Your Honor. I have two quick points I'd like to make. First, the very decision that the government is trying to give preclusive effect to in this case is this Court's decision in Williams. This Court wouldn't have rendered a decision in Williams if the government were correct in saying, as it's saying now, that Williams is a 1331 case. Because if that were so, then Williams would have gone to the regional circuit, not to this Court. It had to be a Tucker Act case for this Court to have jurisdiction. So the very decision to which they're trying to give preclusive effect would not exist as a matter of law if they were correct in their... Is that true? Well, our statute, 1295A2 in this case, says where the jurisdiction of the district court is based in whole or in part on 1346. So that would be true even if a 1331 claim were added. Well, Your Honor, and again, perhaps the more important point, then, is to say that this Court, when it did exercise jurisdiction in Williams, limited itself to jurisdiction under the Tucker Act. I'd refer you to this Court's opinion at 240F3 at 1025, where the Court says, you know, the government raises a question about our jurisdiction under the Tucker Act, and so to avoid whatever tricky jurisdictional issues are, we are limiting our jurisdiction in this case to the backward-looking claim for a single calendar year. And again, the government said in its brief to this Court in Williams when it's discussing the jurisdictional issue, a case falls within the Tucker Act, even if it seeks both monetary damages and equitable relief, as this one does, as long as the claim is essentially one for money damages, which is true here. Do you happen to have, because I don't, have the actual order that was entered by Judge Penn in the Williams case? I do, Your Honor. I have it right here. It's not on paper because it's related to the case today. We can certainly submit that after there's... Well, why don't you just... Sure. If you could give us the gist of it. What I'm going for, obviously, is does it have a declaratory judgment in it? Your Honor, it does not, and I think it's very telling. Here's the judgment for plaintiffs in Williams. It says, It is ordered in the judge's decree, that gives the names of the named plaintiffs there, on their own behalf, and have all those similarly situated, shall receive employment cost index adjustments, sometimes referred to as cost of living adjustments, pursuant to Ethics Reform Act of 1989, for the years 1995, 1996, and 1997, together with all other benefits which should have accrued to them based upon those adjustments. The defendant, United States of America, shall take appropriate action to calculate the amount due to the plaintiffs and the members of their class, pursuant to and consistent with the opinion and disorder that said plaintiff has and shall recover costs from the said defendant. There's not one word about any declaratory or future-looking relief in that. It's all about past money judgment. If that order is not part of the record, readily accessible portion of the record before us, it would be helpful to us if the two of you could agree that that is the judgment and that's all there was that Judge Penn issued and provided us with a copy. Absolutely. We'd be happy to. Right. Just to make sure there's nothing else floating around out there and so forth. Just to be clear, there were three things ordered the same day. There was an opinion, granting, summary, and judgment. These are all dated July 15, 1999. That we have. The opinion, and then there's an order, and then there's a judgment. And so I was reading to you from the judgment, which is the operative legal document. The order just gives a number of orders, and the order does say that you get the past relief, which I mentioned. The order does say, Order that ECI adjustments shall be paid to plaintiffs and the members of their class in the future years. It says that, but there's no declaration in terms of that. But again, this court's jurisdiction. So there is a question as to what you do when you have a judgment, which is typically the operative legal document, and an order, which seems to sweep more broadly than the judgment. But that being said, putting that aside, again, this court exercised jurisdiction in Williams on the basis of a backward-looking claim for a single year. So the very decision to which the government is trying to give issue preclusive effect here very carefully limited its jurisdiction and was not taking this as a case about the future. It was saying, we're limiting our jurisdiction to this one backward-looking year. Is there any difference in your view between the constitutional issues presented by the 1995 statute and the 2001 statute? There are certainly different constitutional issues presented, because there's a question of discrimination against judges in the 2001 statute. I think there are certainly potentially different issues at play in those two. Could you win as to the 1995 statute and lose as to the 2001 statute? I don't think so, Your Honor, because I think since all my clients were judges before 2001, and actually before 95, I don't see how anything done in either of those statutes could take away whatever rights they had under the 1989 statute. So the 1995 statute is unconstitutional as to be so necessary as the 2001 statute. Yes, yes, I think that's true. The only other point I wanted to make, Your Honor, was to reaffirm a suggestion that you were making, that you're absolutely right, that the Supreme Court generally requires formal notice when there are procedures provided for notice, and that's why there's a case I think that you were alluding to that says you need formal service of process to start the time for responding to a complaint. Justice Ginsburg wrote the opinion, the name escapes me now, but the question there was if you know that the person actually got the complaint, shouldn't that start the clock running? And the Supreme Court said no. There's an importance to the formal procedures, and if there's anything that's clear about the Williams case, it's that the formal procedures and the notice were not followed. This was certified, again, without opposition, as a non-opt-out class, no-notice class, and in a two-page order without any analysis, and now the government is saying, guess what, that bounds all the judges forever. And I think, again, one point not to lose sight of here is the legal issues here are structural constitutional issues. They're important to the individual judges, but they're also important to our system of government and judicial independence, and so this is a case at which one has to be very careful, it seems to me, when you say that the first person who can run in with a non-opt-out class can resolve a constitutional issue that will bind a generation of people. Imagine if Plessy v. Ferguson had been litigated as a non-opt-out, no-notice class, presumably under the government's view, that would preclude that issue from being decided for a generation. But again, I think if ever, I mean, we made that point in our brief, Your Honor, but again, I think it's important to keep in mind that there's important constitutional issues here, and again, we don't think this is a close case with respect to the due process issues involved, because it's so clear here that the Williams case was all about money, and this court limited its jurisdiction in Williams to the money claim for a single year. Thank you very much. Thank you. The case is submitted. Thank you both, counsel. All rise.